Estate of John Joseph Nweeya, Deceased, Victoria M. Sargis, Administratrix v. Commissioner.
Estate of John Joseph Nweeya v. Comm'r
Docket No. 25337.
United States Tax Court
1951 Tax Ct. Memo LEXIS 171; 10 T.C.M. (CCH) 640; T.C.M. (RIA) 51208; June 29, 1951
*171 The decedent reported as his only income for the years 1943 to 1946, inclusive, $11,400 received by him as wages he earned as a card dealer in gambling establishments. No returns for prior years were ever filed by him. During the period January 1944 through February 1947 he made investments, bank deposits and incurred expenses totaling over $48,000, approximately $28,000 of which were made out of capital. Respondent determined deficiencies for the taxable years 1944 to 1946, inclusive. Held, that the decedent received additional income in 1944, 1945 and 1946 to the extent of the amount that his investments, bank deposits and expenses during each year, including an estimate of reasonable living expenses, exceeded the total of his reported income plus any capital expended by him in each year. Harold E. Haven, *172 Esq., 1104 Mills Tower, San Francisco, Calif., for the petitioner. Leonard Allen Marcussen, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies against the decedent, John Joseph Nweeya, as follows: 1944
$ 390.00
1945
1,031.40
1946
17,176.12
At the hearing after the evidence had been presented, the respondent made a motion to conform the pleadings to the proof and for increased deficiencies for the taxable years 1944 and 1945. Accordingly, respondent filed an amendment to his answer in which he alleged increased deficiencies as follows: 1944
$11,357.28
1945
334.78
The following are the basic questions involved herein: (1) Did the respondent err in determining additional unreported income for decedent for the taxable years 1944, 1945 and 1946 on the basis of expenditures and investments made in those years? (2) Is the determination and assessment of any part or all of the deficiency barred by the provisions of the sections 275 (c) and 277 of the Internal Revenue Code relative to the running of the statute of limitations? Findings *173 of Fact Part of the facts were stipulated and are so found. The petitioner herein is the Estate of John Joseph Nweeya, Victoria M. Sargis, Administratrix. The first income tax return of Nweeya (hereinafter referred to as the decedent) was filed by him for the taxable year 1943. He filed timely returns for the taxable years 1943 to 1946, inclusive, with the collector of internal revenue for the first district of California at San Francisco. The decedent was born in Iran in the year 1898 and emigrated to the United States as a boy. From about 1919 to the date of his death, May 31, 1947, he lived in San Francisco with the exception of short periods of time spent in Turlock, California. He married Victoria Malick, the administratrix of the estate herein, December 18, 1946, who by remarriage is now Victoria M. Sargis (hereinafter referred to as Victoria). The total income reported by the decedent for the taxable years 1943 to 1946, inclusive, all of which constituted wages received by him as a card dealer in gambling establishments, was as follows: 1943
$ 2,040
1944
1,160
1945
4,500
1946
3,740
Total
$11,440
Prior to 1943 the decedent was employed both *174 as a plasterer, when such work was available, and as a card dealer with the exception of time spent in the military service, September 1942 to March 1943, and an undetermined period of time around 1935 when he was a partner in a card club. On December 31, 1943, the decedent owned a 1941 Buick automobile, which he still held in 1947. He had bank balances in two savings accounts, one with the Bank of America, San Francisco, and the other with the American Trust Company, San Francisco, totaling $2,038.84. The deposits, withdrawals and balance of his account with the Bank of America from January 1, 1944, to May 31, 1947, were as follows: Date
Withdrawals
Interest
Deposits
Balance
12/31/43 $ $ $ $1,012.45
6/30/44
4.56
1,017.01
12/31/44
4.58
1,021.59
6/30/45
5.10
1,026.69
7/14/45
500.00
1,526.69
9/22/45
500.00
2,026.69
12/31/45
7.62
2,034.31
6/25/46
500.00
2,534.31
6/30/46
10.17
2,544.48
8/ 2/46
500.00
3,044.48
11/ 8/46
1,000.00
4,044.48
11/16/46
500.00
3,544.48
12/ 2/46
500.00
3,044.48
12/31/46
13.97
3,058.45
2/ 8/47
2,500.00
558.45
4/29/47
400.00
158.45
6/30/47
2.23
160.58
*175 The deposits, withdrawals and balance of his account with the American Trust Company from January 1, 1944, to May 31, 1947, were as follows: Date
Withdrawals
Interest
Deposits
Balance
12/31/43 $ $ $ $1,026.39
4/10/44
483.50
1,509.89
4/15/44
700.00
2,209.89
6/30/44
5.12
2,215.01
8/ 5/44 $ $ $ 200.00
$2,415.01
12/31/44
11.09
2,426.10
6/30/45
12.12
2,438.22
12/31/45
12.16
2,450.38
6/30/46
12.20
2,462.58
9/ 7/46
11.25
2,451.33
9/26/46
500.00
2,951.33
12/31/46
13.25
2,964.58
2/10/47
900.00
2,064.58
6/30/47
10.07
2,074.65
In September 1944 the decedent held United States Government bonds having a face value of $25,000, and on September 16, 1944, he delivered them to Victoria to be placed in a safety deposit box. On the same date she deposited those bonds in a safety deposit box taken out in a local bank by her and the decedent jointly. The date or dates on which these bonds were purchased by the decedent is not known. In the same year, 1944, decedent purchased $1,875 worth of other United States Government bonds. In the year 1945 decedent purchased $3,750 *176 worth of United States Government bonds. In 1946 and the early part of 1947, the decedent made the following investments and expenditures: Date
Nature of Transaction
Amount
July 26, 1946
Loan to one Robert Nweeya
$ 8,000.00
November 1946
Purchase of furniture
500.00
January 1, 1947
Investment in business known as the New Era Club
3,962.50
Jan.-Feb. 1947
Purchase of an interest in a San Francisco apartment house
20,259.15
None of the decedent's expenditures in 1944 and 1945 were made from capital, since all of the assets proved to have been held or acquired by him during the period of time from December 31, 1943, to December 31, 1945, both inclusive, were still held by him in 1946. These assets consisted of his two savings accounts, an automobile purchased in 1943, the United States Government bonds having a face value of $25,000, and the other United States Government bonds purchased in 1944 and 1945 valued at $1,875 and $3,750, respectively. In 1946 and early 1947, the decedent withdrew from his bank accounts $4,411.25, and he also sold the bonds having a face value of $25,000. Accordingly, $29,411.25 worth of the expenditures made in 1946 and *177 early 1947 are properly chargeable as expenditures out of capital assets. The decedent was a single man until he married Victoria in December 1946. He lived moderately in a room in the Edison Hotel, San Francisco, during part of the year 1943 and the years 1944 and 1945. During all of the period when he resided at his hotel he paid for his room at the rate of $7.50 per week. He was moderate in his eating habits and in his dress. His employment as a card dealer during the years 1943 to 1946, inclusive, required him to work nights. On the basis of these living habits, reasonable estimates of his living expenses for 1945 and 1946 are $2,000 and $2,500, respectively. From the foregoing facts we conclude that the decedent received not more than the following amounts of additional unreported income during each of the years 1944 to 1946, inclusive: 1944
Purchase of Government bonds in 1944
$ 1,875.00
Interest on balances in savings account with Bank of America
9.14
Interest on balances in savings account with American Trust Company
16.21
Unreported income [1]
$ 1,900.35
1945
Purchase of Government bonds in 1945
$ 3,750.00
Living expenses, reasonable estimate
2,000.00
Federal taxes paid
769.40
Interest on balances in savings account with Bank of America
12.72
Interest on balances in savings account with American Trust Company
24.28
$ 6,556.40
Less: Reported income for 1945
4,500.00
Unreported income
$ 2,056.40
1946
Bank deposits - Bank of America
$ 2,000.00
Interest on balances in savings account with Bank of America
24.14
Bank deposits - American Trust Company
500.00
Interest on balances in savings account with American Trust Company
25.45
Loan to Robert Nweeya July 21, 1946
8,000.00
Investment in New Era Club January 1, 1947
3,962.50
Investment in apartment house Jan.-Feb. 1947
20,259.15
Purchase of furniture November 1946
500.00
Living expenses, reasonable estimate
2,500.00
Federal taxes paid
686.55
$38,457.79
Less: Reported income
$ 3,740.00
Sale of Government bonds
25,000.00
Bank withdrawals: Bank of America
3,500.00
American Trust Company
911.25
33,151.25
Unreported income
$ 5,306.54
*178 Opinion HILL, Judge: The respondent determined that the petitioner's decedent received additional unreported income in the taxable years 1944, 1945 and 1946 on the basis of expenditures and investments made by the decedent during that period. The first issue presented is whether the respondent erred in this determination. The petitioner relied strongly on the argument that the respondent's method of computing the amount of additional income was arbitrary and that the respondent accordingly had the burden of proving the decedent received additional unreported income, which he failed to meet. In support of this position petitioner argued that the respondent should not have charged expenditures made in 1947 as income for the taxable year 1946 and that he also improperly applied the "net worth-expenditure" method of computing income because he failed to establish *179 a figure representing the net worth at the beginning and end of each taxable year involved. With respect to the first of these arguments, the expenditures in question were the investment in the New Era Club and the purchase of the apartment house. That the investment in the New Era Club took place on January 1, 1947, is uncontroverted. With respect to the other investment, the real estate agent employed in the business transaction testified that the contract to purchase the apartment house was entered into, and a deposit of $1,000 made, on January 15, 1947, and the balance of the cash payment was made February 10, 1947. We believe that it was not an unreasonable inference that such large investments, the total amount being $24,221.65, made so early in the year 1947 had as their source assets accumulated prior to 1947 out of 1946 income, and we so hold. The second argument relative to the improper use of the net worth-expenditure basis for computing income is not material to the issue of arbitrariness in the method employed by the respondent to compute income in this case because he did not employ what is known as the "net worth-expenditure"basis. He determined the amount of additional *180 unreported income by subtracting reported income from known expenditures and investments during the period 1944 to 1946. inclusive. While this method of computing unreported additional income carries with it the implication that the decedent did not make any of his expenditures from wealth accumulated prior to the year 1944, it does not appear unreasonable on its face nor does any of petitioner's evidence support a finding that the respondent acted arbitrarily in his determination. We therefore reject this contention of the petitioner and hold that the respondent's method used in computing additional unreported income was not arbitrary and the burden of proving error in respondent's determination rested upon petitioner. The following are the decedent's expenditures, other than those made for living expenses and payment of Federal income taxes, which were listed by the respondent in the statement attached to the deficiency notice as the basis for his deficiency determination: 1944
Nature of Expenditure
Amount
Purchase of United States Government bonds
$ 1,875.00
1945
Purchase of United States Government bonds
3,750.00
1946
Investment in apartment house at 2645 Van Ness Ave., San Francisco,
California
20,259.15
Savings account, No. X4903, American Trust Co., Fillmore & O'Farrell
Street Branch
2,074.65
Savings account, No. XXXX, Bank of America, Day and Night Branch
160.68
Furniture purchased in November 1946
500.00
Buick automobile, 1941 model
1,090.00
Investment in partnership, New Era Club, January 1, 1947
3,962.50
Loan made July 21, 1946, to Robert Nweeya
8,000.00
*181 It is to be noted that the respondent did not signify that the amounts in the savings accounts as listed were 1946 deposits, but these items would have no significance as 1946 income unless they consisted of 1946 deposits. Therefore, it appears that the respondent could only have meant that these amounts were 1946 deposits. Petitioner raised objection to the inclusion of these two items as 1946 income and introduced in evidence the decedent's bank books, which showed the amounts listed by the respondent were incorrect. These bank books showed the correct amounts of the 1946 deposits to be $2,000 in the Bank of America and $500 in the American Trust Company and we have employed these correct amounts of 1946 deposits in redetermining the amount of additional unreported income for 1946. Petitioner also objected to the respondent's inclusion of the Buick automobile as a 1946 expenditure, and the evidence proved that the decedent purchased this automobile in 1943. Accordingly, we hold that the respondent erred in including this automobile as an item of 1946 income. The petitioner failed to introduce any evidence either that the decedent did not make any of the other expenditures or *182 that they were made on dates other than those specified by the respondent, so that the only question remaining with respect to them is whether they were made out of capital or current income for each year. In order to show that the source of the decedent's expenditures during the years in question were made from capital funds accumulated prior to 1944, petitioner alleged a net worth of the decedent on December 31, 1943, of an amount in excess of $30,000. However, the evidence introduced was sufficient only to show decedent's net worth on December 31 to be $2,038.84, the total balance in decedent's bank accounts, exclusive of the value of the Buick automobile, which was owned by the decedent in 1943 and still held by him on the date of his death in 1947. The fact that in September 1944 the decedent held United States Government bonds having a face value of $25,000 is not evidence that the bonds were held by the decedent on December 31, 1943; however, even if we were to include the value of these bonds as part of the decedent's net worth on December 31, 1943, it still would not follow that the expenditures in 1944 and 1945 were made out of capital. This is so because during these *183 years the decedent made no bank withdrawals and all of the bonds held or purchased by him during 1944 and 1945 were continuously held by him until 1946, so that it appears that none of his assets were exchanged during that period for other assets. It follows that investments in bonds which he made in 1944 and 1945 in the amounts of $1,875 and $3,750, repectively, which petitioner failed to prove were made from sources other than income in those years, had as their source 1944 and 1945 income, and we so hold. With respect to the investments made in 1946 and early 1947, petitioner produced evidence to the effect that in 1946 decedent still held the United States Government bonds having a face value of $25,000. The evidence of the petitioner also establishes that a substantial part of the proceeds of the sale of these bonds in 1946 were used to pay for the decedent's interest in an apartment house. While no evidence has been introduced to show that all of these bonds were sold in 1945 and early 1947, it appears from the argument of both parties on brief that they have assumed that none of these bonds were still held by the decedent at the time of his death. It follows that the bonds *184 must have been sold in 1946 and, in addition, the evidence of the petitioner also showed that substantial withdrawals were made from decedent's bank accounts in 1946 and early 1947. Accordingly, we hold that the value of these bonds, which, in the absence of evidence to the contrary we assume to be the same as the face value, plus the total amount of the bank withdrawals, should properly be applied against the total amount of the investments and other expenditures as capital expenditures, and in our findings of fact we have proportionately reduced the amount of unreported 1946 income received by the decedent. In computing deficiencies for 1945 and 1946, the respondent assumed living expenses of $3,600 and $3,800, respectively. The petitioner's evidence showed that the decedent was single until he married Victoria in December 1946, that he paid only $7.50 per week for his room in 1945, that his eating habits were moderate, that he owned his own automobile, that he did not keep a large wardrobe and that he worked nights. On the basis of this evidence, we believe the respondent's estimates of living expenses to be excessive and reasonable estimates of his living expenses are $2,000 *185 and $2,500 for 1945 and 1946, respectively, and we so hold. At the hearing and after the evidence had been presented, the respondent made a motion to conform the pleadings to the proof and claimed increased deficiencies for 1944 and 1945 based on the evidence of the petitioner with respect to the bonds owned by decedent in 1944 in the amount of $25,000 and the deposits which the decedent made in his savings account in 1944 and 1945. Accordingly, in an amendment to his answer, the respondent made a claim for increased deficiencies for the taxable years 1944 and 1945. With respect to these increased deficiencies claimed, the respondent had the burden of proving that the bank deposits made in 1944 and 1945 were income in 1944 and 1945 and that the amount of the bonds owned by the decedent in 1944 over and above those valued at $1,875, an element of the original deficiency determined, were purchased out of 1944 income. The respondent did not introduce any evidence to support his claim and the evidence presented at the hearing by the petitioner did not support it because such evidence did not establish as a matter of fact that either the $25,000 worth of bonds or the bank deposits were *186 income in 1944 and 1945. Accordingly, we deny respondent's claim for increased deficiencies for the years 1944 and 1945, except for the amounts of interest which petitioner's evidence showed were earned on the bank balances in those years. The second issue raised by the petitioner in its reply to the respondent's amendment to his answer was whether the computation, determination and assessment of any part of the deficiency with respect to the taxable years 1944 and 1945 is barred by the statute of limitations. Section 275 (c) of the Internal Revenue Code provides that if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return, the tax may be assessed at any time within five years after the return was filed. Section 277 of the Code provides that the running of this statute of limitations shall, after the mailing of the deficiency notice, be suspended for the period during which the Commissioner is prohibited from making the assessment, and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court until the decision *187 of the Tax Court becomes final. The amount of income omitted by the decedent from his returns for the taxable years 1944 and 1945 which was properly includible therein was far in excess of 25 per cent of the amount of gross income stated in the returns for these years. The deficiency notice for the taxable years 1944 to 1946, inclusive, was mailed by the respondent July 13, 1949, within the five-year period specified in section 275 (c) of the Code, i.e., within five years from March 15, 1945. Therefore, the statute of limitations was tolled with respect to assessment of the deficiency since the petitioner filed a petition with the Tax Court for a redetermination. Accordingly, we reject the contention of the petitioner and hold that the computation, determination and assessment of the deficiency are not barred by the provisions of the Code relative to the running of the statute of limitations. Decision will be entered under Rule 50. Footnotes
1. As in the respondent's deficiency determination for 1944 this figure was not reduced by the amount of reported income, $1,160; since such reported income would be insufficient to cover a reasonable estimate of living expenses, plus Federal taxes paid, which items were also omitted from respondent's 1944 determination.↩